O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| ANA AREOPAJA, | CV 21-4739-RSWL-JPRx |
|---|---|
| Plaintiff, | **ORDER re: MOTION FOR SUMMARY JUDGMENT** [24] |
| v. | |
| MORRISON MANAGEMENT SPECIALISTS, et al., | |
| Defendants. | |

Plaintiff Ana Areopaja ("Plaintiff") brought this Action against Defendants Morrison Management Specialists, Inc. and Compass Group USA, Inc. (collectively, "Defendants"), asserting the following claims for relief: (1) disability discrimination in violation of California Fair Employment and Housing Act ("FEHA"); (2) retaliation in violation of FEHA; (3) failure to prevent discrimination and retaliation in violation of FEHA; (4) failure to accommodate disability in violation of FEHA; (5) failure to engage in the

interactive process in violation of FEHA; (6) violation
of the California Family Rights Act ("CFRA");
(7) discharge in violation of Labor Code § 233; and
(8) wrongful termination in violation of public policy.
Plaintiff also seeks punitive damages.  Currently before
the Court is Defendants' Motion for Summary Judgment
[24].

Having reviewed all papers submitted pertaining to
this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS**:
the Court **GRANTS** Defendants' Motion in part and **DENIES**
Defendants' Motion in part.  The Court **VACATES** the trial
date subject to being reset, along with the filing of
amended pretrial documents and motion in limine
briefing, and **ORDERS** the Parties to submit a Status
Report addressing compliance with Local Rule 16-15.1.

## I.   BACKGROUND

A.   **Factual Background**

Plaintiff was employed by Defendants as a diet
technician from September 14, 2006, until September 21,
2020.  Defs.' Statement of Undisputed Facts ("Defs.'
SUF") ¶ 5, ECF No. 24-2.  During her employment,
Plaintiff received an employee handbook describing
Defendants' attendance policies.  Id. ¶ 31.  Employee
absences, whether authorized or not, were recorded on a
"PTO Tracker," and Plaintiff's manager was responsible
for updating the PTO Tracker for Plaintiff for the last
year of her employment.  Id. ¶¶ 31-32.  Plaintiff has
the opportunity to review her PTO Trackers to ensure

their accuracy.  Id. ¶ 83.  If a date in the PTO Tracker
had a black "X" in the corresponding box, that indicated
that Plaintiff was not scheduled to work that date.  Id.
¶ 34.  If the date had a red "V," in the corresponding
box it indicated that Plaintiff was scheduled to work
but was absent and paid vacation time, and if there was
a red "S" in the corresponding box then Plaintiff was
absent and paid sick leave.  Id. ¶ 35.  If the "V" was
accompanied by a number, it indicated the number of
hours the Plaintiff was absent and paid vacation time.
Id. ¶ 37.  The PTO Tracker notes that employees can only
use forty-eight hours of paid sick leave each fiscal
year.  Id. ¶ 40.

    Under Defendants' employee policies outlined in its
employee handbook, excused time away from work includes
any requested time off from work that is approved by the
employee's manager at least one day in advance,
including use of vacation or paid time off.  Decl. of
Elizabeth Toushin in Supp. of Defs.' Mot. for Summ. J.
at 58 ("Toushin Decl."), ECF No. 24-3.  Excused time
also includes time missed excused by federal, state, or
local law.  Id.  Unexcused time away from work is
referred to as an "Occurrence."  Id. at 59.  An
Occurrence includes an absence that doesn't fall within
one of the "excused time away" categories.  Id.  Failure
to follow notice protocol will also result in an
occurrence even if the absence is approved.  Defs.'s SUF
¶ 21.  If an employee incurs seven occurrence points in

a rolling twelve-month period, they will be discharged. Toushin Decl. at 60. Defendants' policies provide that all absences, lateness, and early-outs must be communicated to the employee's manager. Id. Failure to follow this procedure will be considered a work rule policy violation rather than an attendance violation and will result in progressive counseling up to and including termination. Id. at 61.

Plaintiff was absent from her job on various dates throughout 2020:

- Plaintiff was absent from work on February 17, 2020, because "the clinic was closed that day for a holiday and she had no patients there." Pl.'s Statement of Genuine Disputes in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s SGD") ¶ 44, ECF No. 25-1.[1] Plaintiff requested to take the February 17 off on February 14. Id. Defendant contends this violates the notice policies and Plaintiff received one occurrence point for this day. Id. ¶¶ 46, 48.
- Plaintiff asked for and took March 10, 2020, off because the hot water at her home was not working. Id. ¶¶ 49-50. Defendant contends that Plaintiff's same-day request violates notice policies and

---

[1] This document contains a table with Plaintiff's responses to Defendants' statement of uncontroverted facts and a table with facts that Plaintiff asserts are disputed. The Court refers to the former table as "Pl.'s SGD" and the latter table as "Pl.'s SDF."

Plaintiff received one occurrence point for this absence.  Id. ¶¶ 51, 53.

- Plaintiff requested and took March 19, 20, and 23, 2020 off work because the clinic where she was scheduled to work those days did not have patients coming in.  Id. ¶¶ 54, 56.  For those dates, Plaintiff used paid vacation for her absences.  Id. ¶ 55.  Defendant contends Plaintiff violated notice protocols by asking for this time off only a few days prior, and Plaintiff received one occurrence point.  Id. ¶¶ 57, 59.

- Plaintiff requested leave and was absent from work on April 2 and 3, 2020, for her brother's gallbladder surgery.  Id. ¶¶ 60-61.  Plaintiff once again used paid vacation time for this absence.  Id. ¶ 62.  Plaintiff received one occurrence point for these absences.  Id. ¶ 63.

- Plaintiff also testified at her deposition that she took time off from April 7 to 24, 2020, to quarantine after learning she was exposed to COVID-19.  Decl. of Lisa Watanabe-Peagler in Supp. of Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Peagler Decl."), Ex. 13 ("Pl. Dep.") 133:14-137:17, ECF No. 25-3.

- Plaintiff asked to and took off work on May 15, 2020, because her brother was having cataract surgery.  Pl.'s SGD ¶ 64.  She used paid vacation time for this absence as well.  Id. ¶ 66.

1   Plaintiff received another occurrence point for
2   this absence.  Id. ¶ 67.
3   • Plaintiff was absent on June 1 and 2, 2020, due to
4   severe stomach pains.  Id. ¶ 69.  She was paid
5   vacation time for this absence.  Id. ¶ 71.
6   Defendant contends that Plaintiff did not follow
7   notice protocols because she contacted her manager
8   about her absence on the morning of June 1.  Id.
9   ¶ 70.  Plaintiff received an occurrence point for
10  this absence.  Id. ¶ 72.
11  • Plaintiff asked on July 7, 2020, to leave early to
12  pick up her car from the mechanic.  Id. ¶ 73.
13  Plaintiff left early and was paid vacation time.
14  Id. ¶ 75.  Defendant contends Plaintiff did not
15  follow notice protocols because she requested to
16  leave that same day.  Id. ¶ 74.  Plaintiff received
17  one half of an occurrence point for this day.  Id.
18  ¶ 76.
19  • Plaintiff tested positive for COVID-19 around July
20  13 and was on approved medical leave of absence
21  from July 13 to 25, 2020.  Id. ¶¶ 7-8; 81.
22  • Late on the night of September 17, 2020, Plaintiff
23  asked to take September 18, 2020, off work to see
24  her brother in the hospital.  Id. ¶ 77.  Plaintiff
25  was paid vacation time for this absence.  Plaintiff
26  received one occurrence point for this day.  Id.
27  ¶ 81.
28  On September 21, 2020, Plaintiff's manager provided

6

Ms. Elizabeth Toushin, the Senior Director of Nutrition
at the time, with an Associate Counseling Report ("ACR")
showing that Plaintiff had incurred over seven
occurrence points, exceeding the number of allowances
under Defendants' policies.  See id. ¶ 89; Decl. of
Elizabeth Toushin in Supp. of Defs.' Mot. for Summ. J.
("Touchin Decl.") ¶ 2, ECF No. 24-3.  Ms. Toushin then
made the decision to terminate Plaintiff's employment.
Pl.'s SGD ¶ 90.  Defendant contends that Plaintiff
accumulated occurrence points when she was absent due to
illness but did not have any remaining paid sick leave
available, and when she violated notice policies.  Id.
¶¶ 46, 51, 57, 62, 70, 74, 96.  Plaintiff counters that
there is nothing in Defendants' attendance and sick time
policies providing that an employee must be given an
occurrence point for taking sick time after using up
paid sick time, and that the policy requiring only one
days' notice for an absence controls.  Id. ¶¶ 46, 51,
57, 96.

Shortly after Plaintiff's manager contacted
Ms. Toushin, Plaintiff was terminated from her position
and was provided an ACR outlining her occurrence points.
Pl.'s Additional Material Facts in Dispute ("Pl.'s SDF")
¶¶ 55-56, ECF No. 25-1.  In this ACR, Plaintiff had
incurred a total of two occurrence points for her April
7 through 24 absence, when she was quarantining after
COVID-19 exposure, and for her July 13 through 25
absence, when she was ill with COVID-19.  Id. ¶¶ 67, 70.

Ms. Toushin stated that both of these occurrence points were "erroneously added" to the ACR, and Plaintiff's manager stated that after Plaintiff's termination, he crossed out the July absence as incurring an occurrence point when he realized it was mistakenly included. Toushin Decl. ¶ 15; Peagler Decl., Ex. 14 ("Webb Dep.") 162:16-163:20.

**B. <u>Procedural Background</u>**

Plaintiff filed her Complaint in California state court and Defendants removed [1] to this Court on June 10, 2021.  Defendant Morrison moved for summary judgment [24] on December 14, 2023, and Defendant Compass joined [24-7] in bringing this motion. Plaintiff opposed [25] on December 27, 2023, and Defendants replied [26] on January 3, 2023.

## II.  DISCUSSION

**A. <u>Legal Standard</u>**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it might affect the outcome of the suit, and the dispute is "genuine" if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.  <u>Anderson v. Liberty Lobby</u>, 477 U.S 242, 248 (1986).

The moving party bears the initial burden of proving the absence of a genuine dispute of material

fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986).  Where the nonmoving party bears the burden of
proof at trial, the moving party need only show "an
absence of evidence to support the nonmoving party's
case."  Id. at 325.  If the moving party meets its
burden, the burden then shifts to the nonmoving party to
present "specific facts showing that there is a genuine
issue for trial."  Anderson, 477 U.S at 250.  The
nonmoving party "must show more than the mere existence
of a scintilla of evidence . . . or some 'metaphysical
doubt' as to the material facts at issue."  In re Oracle
Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).

The evidence, and all reasonable inferences based
on underlying facts, must be construed in the light most
favorable to the nonmoving party.  Scott v. Harris, 550
U.S. 372, 378 (2007).  In reviewing the record, the
court's function is not to weigh the evidence but only
to determine if a genuine issue of material fact exists.
Anderson, 477 U.S. at 255.  "A district court's ruling
on a motion for summary judgment may only be based on
admissible evidence."  In re Oracle Corp. Sec. Litig.,
627 F.3d at 385.  "While the evidence presented at the
summary judgment stage does not yet need to be in a form
that would be admissible at trial, the proponent must
set out facts that it will be able to prove through
admissible evidence."  Norse v. City of Santa Cruz, 629
F.3d 966, 973 (9th Cir. 2010).
///

**B.   Analysis**

    1.   Evidentiary Objections

    Plaintiff lodged twenty-five evidentiary objections to evidence relied on in Defendants' Motion.  See generally Pl.'s Objs to Defs.' Evid. In Supp. of Mot. for Summ. J., ECF No. 25-4.  Many of Plaintiff's objections read as a continuation or reiteration of Plaintiff's arguments in its Opposition.  See generally Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Opp'n"), ECF No. 25.  Defendant also lodged an objection to Plaintiff's proffered opinion on the status of her COVID-19 illness.  See Defs.' Objs to Pl.'s Evid. In Opp'n to Mot. for Summ. J., ECF No. 26-1.  The Court has considered the admissibility of the evidence and has not considered facts that are irrelevant or that could not be in a form that would be admissible at trial.  See Norse, 629 F.3d at 973.  The objections are therefore **OVERRULED.**

    2.   Claims One, Three, Four, and Five

    Plaintiff's claims of disability discrimination, failure to prevent discrimination and retaliation, failure to accommodate, and failure to engage in the interactive process are all premised on Plaintiff being disabled under FEHA.  See generally Compl., ECF No. 1-1.  Plaintiff contends that she was disabled at the time the relevant events occurred because she suffered from COVID-19.  See, e.g., Compl. ¶¶ 23, 35; Opp'n 8:7-23.  Plaintiff argues that she was terminated from her

position based on her COVID-19 infection, which she contends is a disability under FEHA.  See generally Compl.  This Court holds, however, that COVID-19 does not qualify as a disability under FEHA.

A federal court exercising diversity jurisdiction, as this Court is here, applies the law of the state in which it sits.  Dimidowich v. Bell & Howell, 803 F.2d 1473, 1482 (9th Cir. 1986).  In doing so, a federal court will follow a state supreme court's precedent, or alternatively, predict how the supreme court would rule based on intermediate appellate court decisions and decisions by courts in other jurisdictions.  See Knapp v. Cardwell, 667 F.2d 1253, 1260 (9th Cir.), cert. denied, 459 U.S. 1055 (1982); Fiorito Bros. v. Fruehauf Corp., 747 F.2d 1309, 1314 (9th Cir. 1984); Lewis v. Anderson, 615 F.2d 778, 781 (9th Cir. 1979), cert. denied, 449 U.S. 869 (1980); see also Takahashi v. Loomis Armored Car Serv., 625 F.2d 314, 316 (9th Cir. 1980) (federal court may look to well-reasoned decisions from other jurisdictions); Am. Sheet Metal v. Em-Kay Eng'g Co., 478 F. Supp. 809, 813 (E.D. Cal. 1979) (decisions by California Courts of Appeal may be persuasive).  At this time, neither the California Supreme Court nor the California courts of appeal have addressed whether a COVID-19 infection is a disability under FEHA.

This Court finds the reasoning in Roman v. Hertz Local Edition Corp. instructive.  No. 20CV2462-BEN

11

(AGS), 2022 WL 1541865 (S.D. Cal. May 16, 2022).  There, the court first looked to regulations issued by the California Department of Fair Employment and Housing ("DFEH"), which administers FEHA.  <u>Id.</u> at *4-5.  As administrator of FEHA, DFEH regulations are presumptively valid and binding.  <u>See</u> Cal. Gov. Code § 12935; <u>Tomlinson v. Qualcomm</u>, 118 Cal. Rptr. 2d 822, 828 (2002).

     In turn, Cal. Code Regs. tit. 2, § 11065(d)(9)(B) excludes from the definition of a FEHA disability those "conditions that are mild, which do not limit a major life activity, as determined on a case-by-case basis." This regulation defines a mild condition and gives examples.  For instance, "mild conditions" are ones which have "little or no residual effects," like "the common cold . . . seasonal or common influenza . . . muscle aches, soreness . . . [and] non-migraine headaches" as specific examples of ailments that do not qualify as a disability under FEHA.  <u>Id.</u>  Thus, the court in <u>Roman</u> concluded, "[w]hen it presents with temporary symptoms akin to the common cold or seasonal flu, COVID-19 will fall outside the FEHA definition of ailments considered a disability, pursuant to § 11065(d)(9)(B)."  2022 WL 1541865 at *5.  Accordingly, there, the court found that the plaintiff's COVID-19 infection did not constitute a disability under FEHA because the undisputed facts showed that Plaintiff's COVID-19 infection resulted in only mild symptoms and

1    little to no residual effects.  Id.

2        Similarly, here, Plaintiff was unable to work for
3    only a short period of time.  Indeed, it is uncontested
4    that Plaintiff was on approved medical leave from
5    July 13, 2020, through July 25, 2020, due to her COVID-
6    19 infection.  See Defs.' SUF ¶ 8; Pl.'s SGD ¶ 8.
7    Moreover, Plaintiff stated that her symptoms consisted
8    of fatigue, headaches, loss of smell, loss of taste, a
9    sore throat and cold, runny nose, and loss of appetite.
10   Pl.'s SGD ¶ 9.  Just as in Roman, where a short-term
11   COVID-19 infection with cold or flu-like symptoms was
12   not a disability, here, the duration and symptoms of
13   Plaintiff's COVID-19 infection do not rise to the level
14   of a disability under FEHA.

15       Plaintiff contends that Roman is distinguishable
16   from the instant Action because there, the plaintiff was
17   ill for four days total and was out of work for only one
18   day, whereas here, Plaintiff was ill and on leave from
19   work from July 13 to 25.  Defs.' SUF ¶ 8; Pl.'s SGD ¶ 8.
20   But regardless, the reasoning in Roman is still
21   applicable here.  Plaintiff's COVID-19 infection spanned
22   approximately twelve days.  She testified that she
23   suffered from the previously mentioned symptoms for
24   about four to five days. Opp'n 9:7-9.  And Plaintiff
25   even concedes that her conditions were temporary.  Id.
26   8:21-23.  Thus, Plaintiff's COVID-19 infection does not
27   constitute a disability under FEHA, as it was neither
28   longer-term nor severe.

Since Plaintiff is not disabled under FEHA, her claims of disability discrimination, failure to prevent discrimination and retaliation, failure to accommodate, and failure to engage in the interactive process fail. Therefore, the Court **GRANTS** Defendants' Motion as to these claims.

### 3.   Claim Two: Retaliation

To establish a prima facie case of retaliation under FEHA, a plaintiff must show (1) she engaged in protected activity, (2) the employer subjected her to an adverse employment action, and (3) a causal link between the protected activity and the employer's action exists. See Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005).

Plaintiff contends that Defendants "retaliated against Plaintiff based in part on her physical disability and request for an accommodation for such disability." Compl. ¶¶ 35, 36, 40.  Plaintiff again states that her COVID-19 infection constitutes the disability at issue and provides no other basis for the alleged retaliation.  Id. ¶ 35.  As discussed, Plaintiff's COVID-19 infection is not a disability under FEHA.  Accordingly, Plaintiff did not engage in a protected activity by asking for accommodations, and therefore Defendants did not retaliate against Plaintiff as defined by FEHA.  Thus, the Court **GRANTS** Defendants' Motion as to Plaintiff's retaliation claim.

///

4.   Claim Six: Violation of the California Family Rights Act

The CFRA is a portion of FEHA that "is intended to give employees an opportunity to take leave from work for certain personal or family medical reasons without jeopardizing job security." Bareno v. San Diego Community College Dist., 7 Cal. App. 5th 546, 558 (2017) (quoting Nelson v. United Techs., 74 Cal. App. 4th 597, 606 (1999)).  "The CFRA entitles eligible employees to take up to [twelve] weeks of unpaid medical leave during a [twelve]-month period for certain personal or family medical conditions, including care for their children, parents, or spouses or to recover from their own serious health condition." Neisendorf v. Levi Strauss & Co., 143 Cal. App. 4th 509, 516 (2006) (citations omitted). "CFRA's regulations provide that, for an employee to be entitled to a medical leave for her own serious health condition, the condition must cause her to be unable to work at all or unable to perform one or more of the essential functions of her position." Id. at 516-17 (citation omitted).

"An employee who takes CFRA leave is guaranteed that taking leave will not result in a loss of job security or in other adverse employment actions." Id. (citation omitted). "Violations of the CFRA generally fall into two types of claims: (1) 'interference' claims in which an employee alleges that an employer denied or interfered with her substantive rights to protected

medical leave, and (2) 'retaliation' claims in which an
employee alleges that she suffered an adverse employment
action for exercising her right to CFRA leave." Rogers
v. Cnty. of Los Angeles, 198 Cal. App. 4th 480, 487-488
(2011) (citations omitted).

Plaintiff asserts a retaliation claim under CFRA.
Compl. ¶¶ 76-88.  To establish a prima facie CFRA
retaliation claim, the plaintiff must show:
(1) defendant was a CFRA covered employer, (2) plaintiff
was eligible for CFRA leave, (3) plaintiff exercised her
right to make a qualifying leave, and (4) plaintiff
suffered an adverse employment action because she
exercised her right to take CFRA leave.  Dudley v. Dep't
of Trans., 90 Cal. App. 4th 255, 261 (2001).

Plaintiff contends that Defendant terminated her
employment in retaliation for taking a day off to see
her brother in the hospital on September 18, 2020, and
for taking time off after she contracted COVID in July
2020.  See Compl. ¶¶ 76-88.  Defendant counters that
(1) Plaintiff was not eligible to take CFRA leave to see
her brother in the hospital because at the time of her
leave, the definition of a family member covered under
CFRA did not include siblings, and (2) Plaintiff has no
evidence that the decision to terminate her employment
due to her violation of Defendants' attendance policies
was pretextual.  Mot. 23:3-7.

First, the version of the CFRA effective from
January 1, 2020, to December 31, 2020, and therefore

applicable in the instant Action, did not include
siblings under the definition of a family member for
which an employee could take time off to care for
without repercussion.  Compare Cal. Gov't Code § 12945.2
(Effective January 1, 2020, to December 31, 2020) with
Cal. Gov't Code § 12945.2 (Effective January 1, 2023).
Accordingly, the Court considers only whether Defendant
violated the CFRA in relation to Plaintiff's absence due
to her COVID-19 infection.

It is undisputed that Defendant Compass approved
Plaintiff's CFRA leave from July 13 to 25.  See Plf.'s
SGD ¶ 54.  Therefore, the first three elements of a CFRA
retaliation claim are met, and this claim turns on
whether Defendant was terminated due to her CFRA
absence.  To successfully oppose summary judgment,
Plaintiff must show that there is a triable issue of
material fact as to whether the CFRA leave taken by
Plaintiff was impermissibly considered as a factor in
the termination of her employment.  Xin Liu v. Amway
Corp., 347 F.3d 1125, 1136 (9th Cir. 2003).  Plaintiff
must establish that the decision to terminate her
employment was "not actually independent [of her
employer's purported bias related to medical leave]
because [her employer] influenced or was involved in the
decision or investigation leading thereto."  Poland v.
Chertoff, 494 F.3d 1174, 1184 (9th Cir. 2007).

Plaintiff has raised a genuine issue of material
fact as to whether Defendant improperly considered her

July 2020 CFRA leave of absence in deciding to terminate Plaintiff's employment.  Plaintiff's manager and Ms. Toushin have both stated that Plaintiff was terminated from her position due to excessive absences.  See Touchin Decl.; Webb Dep.  The parties agree that Plaintiff's manager provided Ms. Toushin with an ACR outlining Plaintiff's absences and occurrence points, and that Ms. Toushin then decided to terminate Plaintiff's employment.  See Pl.'s SGD ¶ 89; Touchin Decl. ¶ 2.  Moreover, it is undisputed that Plaintiff received a copy of the ACR outlining absences for which she received occurrence points, and that the ACR included her CFRA leave as an "unauthorized absence" for which she received an occurrence point.  Pl.'s SDF ¶¶ 55-56, 67, 70.  Ms. Toushin and Plaintiff's manager contend that the occurrence point stemming from Plaintiff's CFRA leave was "erroneously" added.  Toushin Decl. ¶ 15; Webb Dep. 162:16-163:20.  Indeed, Plaintiff's manager even crossed part of that entry out after Plaintiff's termination.  Webb Dep. 162:16-163:20. But such an admission of error does not indicate that Defendants did not consider Plaintiff's CFRA leave when deciding whether to terminate her employment.

Defendants also argue that they could have terminated Plaintiff's employment without the CFRA leave occurrence point because Defendants' policy allows for termination after seven occurrence points, and Plaintiff had a total of 9.5 occurrence points.  But Plaintiff

incurred seven points at the beginning of June, yet she was not terminated from her position until September. Moreover, Plaintiff's CFRA leave, taken after she had already incurred seven points, was included in the ACR considered by Ms. Toushin when deciding whether to terminate Plaintiff's employment.  So, while it might be true that Defendants could have terminated Plaintiff from her role three months earlier, the Court's inquiry is limited to whether Defendants wrongfully considered the CFRA leave when deciding to terminate Plaintiff. And here, there is a genuine issue of material fact as to whether Defendants considered Plaintiff's CFRA leave when deciding to terminate her employment.  Therefore, the Court **DENIES** Defendants' Motion for Summary Judgment as to Plaintiff's sixth claim.

    5.   Claim Seven: Discharge in Violation of Labor
           Code § 233 – Paid Sick Leave

    Plaintiff asserts a claim under California Labor Code § 233.  This statute prohibits employers from discouraging employees from using their accrued sick leave.  See Cal. Lab. Code § 233.  Specifically, § 233(c) provides that an employer cannot "deny an employee the right to use sick leave or discharge, threaten to discharge, demote, suspend, or in any manner discriminate against an employee for using, or attempting to exercise the right to use, sick leave to attend to an illness or the preventive care of a family member . . . ."  Plaintiff contends that she had

accrued, but unused, protected sick leave and used some of this sick leave for when she suffered severe stomach pains on June 1 and 2, 2020.  Compl. ¶ 91.  She further argues that Defendants violated Labor Code § 233(c) when it terminated her employment partly due to this absence. Id.

Under Defendants' policies, employees may use up to forty-eight hours of paid sick time from October 1 through September 30.  The following facts are undisputed:

- Plaintiff received thirty-two hours of sick pay during the pay period of October 4, 2019, through October 17, 2019.  Plaintiff's SGD ¶ 100

- Plaintiff received an additional eight hours of sick pay during the pay period of November 11, 2019, through November 14, 2019.  Id. ¶ 101

- Plaintiff was paid two hours of sick time for February 13.  Id. ¶ 92.

- Plaintiff was paid six hours of sick time for the week ending in July 2020.  Id. ¶ 93.

- Plaintiff was paid vacation time for her June 1 and 2 absences.  Id. ¶ 71.

- Plaintiff's manager filled out her PTO Tracker on her behalf during the relevant time period.  Defs.' SUF ¶ 5.

While it is undisputed that Plaintiff exhausted all forty-eight hours of paid sick time by July 15, 2020, Plaintiff contends that Defendant denied her the right

to use her available sick leave to cover one or more of the eight absences prior to July 15.  Opp'n 19:3-21. Plaintiff further argues that her manager gave her occurrences for her absences on the grounds that she had no sick time available, when she did.  Id.; see also Toushin Decl., Ex. 6.  Specifically, Plaintiff argues that she could have used sick leave for her June 1 and 2 absences and therefore she was wrongfully terminated based on her use of sick leave.  But by February 13, 2020, Plaintiff only had six hours of sick leave remaining.  And she was paid those six hours when she was out sick in July 16, 2020.  Pl.'s SGD ¶ 93.

Moreover, it is undisputed that Plaintiff had the opportunity to review her PTO Tracker to ensure its accuracy.  Id. ¶ 83.  If Plaintiff had wanted to use her sick time, rather than vacation time, for her June 1 and 2 absences, she had the opportunity to raise that with her manager and did not.  There is no evidence to show that Defendant denied Plaintiff the right to use sick leave or discharged her for doing so, and Plaintiff has failed to raise a genuine issue of material fact regarding her Section 233 claim.  Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's seventh claim.

///
///
///
///

1      6.   Claim Eight: Wrongful Discharge in Violation of

2      Public Policy

3    Wrongful discharge in violation of public policy is

4 a California common law action providing that when an

5 employer's discharge of an employee violates fundamental

6 principles of public policy, the discharged employee may

7 maintain a tort action.  See Ferretti v. Pfizer Inc.,

8 855 F. Supp. 2d 1017, 1024 (N.D. Cal. 2012).  Wrongful

9 discharge in violation of public policy is a derivative

10 claim that may be based on the policy underlying the

11 CFRA.  See Nelson v. United Techs., 88 Cal. Rptr. 2d

12 239, 245-46 (Cal. App. 1999), as modified (Sept. 22,

13 1999).

14    Here, since the Court finds there is a genuine

15 issue of material fact regarding Plaintiff's CFRA claim,

16 Plaintiff's derivative claim also survives summary

17 judgment.  The Court therefore **DENIES** Defendants' Motion

18 as to Plaintiff's eighth claim.

19    7.  Punitive Damages

20    An award of punitive damages requires a plaintiff

21 to prove "by clear and convincing evidence that [a

22 defendant was] guilty of oppression, fraud, or malice."

23 Aquino v. Superior Ct., 21 Cal. App. 4th 847, 857

24 (1993); see also Cal. Civ. Code § 3294.  Under

25 California law, a corporation may be held liable for

26 punitive damages through the malicious acts or omissions

27 of their employees, but only for the acts or omissions

28 of those employees with sufficient discretion to

determine corporate policy.  See Cruz v. HomeBase, 83
Cal. App. 4th 160, 167 (2000).  Those individuals
include the corporation's officer, director, or a
managing agent.  Cal. Civ. Code § 3294(b).  "The
managing agent must be someone who exercises substantial
discretionary authority over decisions that ultimately
determine corporate policy."  White v. Ultramar, Inc.,
21 Cal.4th 563, 573 (1999).  "The mere ability to hire
and fire employees does not render a supervisory
employee a managing agent under section 3294(b)."
Samson v. Wells Fargo Bank, N.A., No. CV 16-4839-GW-
AGRX, 2021 WL 937687, at *6 (C.D. Cal. Jan. 21, 2021).
"[T]o demonstrate that an employee is a true managing
agent under section 3294, subdivision (b), a plaintiff
seeking punitive damages would have to show that the
employee exercised substantial discretionary authority
over significant aspects of a corporation's business."
White, 21 Cal.4th at 577.

    Here, Plaintiff's allegations of misconduct pertain
to her manager and Ms. Toushin.  There is no evidence
that either Plaintiff's manager or Ms. Toushin have a
role in determining Defendants' corporate policy.  While
Plaintiff contends that Ms. Toushin's role qualifies her
as a manager, she has not raised a genuine issue of
material fact as to whether Ms. Toushin had substantial
discretionary authority over significant aspects of
Defendants' businesses.  See generally Opp'n.  Indeed,
Toushin testified that "policies and procedures [were]

already implemented by the company," and she merely "ensure[d] that they [were] followed and executed appropriately."  Peagler Decl., Ex. 15 ("Toushin Dep.") 34:17-25, ECF No. 25-2.  While Plaintiff contends that Toushin was involved in drafting a policy, Toushin clarified that "the one policy that [she] participated in the creation of . . . [was for] the identification and diagnosis of malnutrition for pediatric and adult hospitalized patients."  Pl.'s SGD ¶ 102; Toushin Dep. 39:20-40:13.  This clearly shows that Ms. Toushin was not so substantially involved in Defendants' business so as to be considered an officer, director, or managing agent.  Accordingly, since none of the individuals involved in Plaintiff's termination were officers, directors, or managing agents of Defendants, Plaintiff may not seek punitive damages.

    8.   Local Rule 16-15.1

     First, in light of the following discussion, the Court hereby **VACATES** the trial date subject to being reset along with the filing of amended pretrial documents and motion in limine briefing.

     Next, Local Rule 16-15.1 provides that parties in a civil case must participate in alternative dispute resolution procedures specified in the local rules or otherwise approved by the trial judge.  L.R. 16-15.1. On June 10, 2021, the Court provided the Parties with notice of this rule.  Notice to Parties of Court-Directed ADR Program, ECF No. 8.  Then, on September 2,

1  2021, the Court ordered the Parties to a private
2  mediator with the mediation to be held no later than
3  eleven days before trial.  Order/Referral to ADR
4  Procedure No. 3, ECF No. 13.  The Court hereby **ORDERS**
5  the Parties to submit a Status Report addressing whether
6  the Parties have attempted to resolve this dispute in
7  mediation or have scheduled mediation for a future date.
8  This status report must be filed by **March 29, 2023.**

9  In the event that the Parties have already
10  attempted to resolve this dispute in mediation and were
11  unable to do so, the Court strongly urges the Parties to
12  consider further mediation on the remaining claims.  If
13  the Parties decide to further mediate, they must file a
14  Status Report updating the Court on the results of the
15  mediation within thirty (30) days of its conclusion.

16  **III.  CONCLUSION**

17  Based on the foregoing, the Court **GRANTS**
18  Defendants' motion in part and **DENIES** Defendants' Motion
19  in part.  The Court **VACATES** the trial date subject to
20  being reset, along with the filing of amended pretrial
21  documents and motion in limine briefing, and **ORDERS** the
22  Parties to submit a Status Report addressing compliance
23  with Local Rule 16-15.1.

24  **IT IS SO ORDERED.**

25

26  DATED: March 14, 2023          */S/ RONALD S.W. LEW*
                                   _____
27                                 **HONORABLE RONALD S.W. LEW**
                                   Senior U.S. District Judge
28